IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARGARITA R.T.[1],<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 23-1028 (GLS) |

## OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 2. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 24. The Commissioner opposed. Docket No. 29. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 22. After careful consideration of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED**.

### I. Procedural Background

Plaintiff worked as a cashier at a supermarket from 2003-2008 and as a sewing machine operator (seamstress) at a factory in Puerto Rico from 2008-2017. Tr. 42, 411, 700, 788.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of March 28, 2017, the following conditions limited her ability to work: degenerative disc disease, herniated cervical discs, fibromyalgia, arthritis, carpal tunnel syndrome, depression, anxiety, insomnia, nervousness, headaches, thyroid, and lumbar spine issues. Tr. 390-391. The application was denied initially and upon reconsideration. Tr. 390-400, 414-425. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on March 10, 2021, a hearing was held via telephone before ALJ Peter

---

[1]  Plaintiff's last name is omitted for privacy reasons.

[2]  "Tr." refers to the transcript of the record of proceedings.

Lee. Tr. 52-76. Plaintiff testified with the assistance of an interpreter and was represented by a non-attorney representative. Id. Vocational Expert Christine Spaulding also testified. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of March 28, 2017, through December 31, 2021, the last date insured. Tr. 43-44. Plaintiff asked the Appeals Council to review but the request was denied on December 6, 2022 (Tr. 1-8), rendering the Commissioner's decision the final decision for review by this Court. On January 23, 2023, Plaintiff initiated this action and both parties filed memoranda in support of their positions. Docket Nos. 2, 24, 29.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P,

App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Sec'y of Health & Hum. Servs., 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

B.     **Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the

Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir.1987).

### III. Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 28, 2017, the alleged onset of disability. Tr. 36. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): degenerative disc disease with radiculopathy, fibromyalgia, and migraine headaches. Tr. 36. The ALJ further found that Plaintiff had impairments that were not severe as these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 36. The non-severe impairments were Plaintiff's gastroesophageal reflux disease (GERD), hypothyroidism, hyperlipidemia, and chest pain and palpitations. Id.

The ALJ further found that Plaintiff's depression and anxiety were non-severe under 20 C.F.R. § 404.1520a(d)(1), after considering four broad areas of mental functioning, known as the "paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves (Tr. 36-38). See 20 C.F.R. Pt. 404, Subpart P, Appendix 1. The ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information. The ALJ noted that Plaintiff's mental examinations revealed that her cognitive functioning was intact, that she had average intellectual functioning and normal memory. Tr. 37. Additionally, the ALJ found that there was no objective medical finding of serious neurological loss and that Plaintiff described having modest immediate recall difficulties. Id. The ALJ found that Plaintiff's ability to interact with others was mildly limited because there was no evidence of serious paranoia or agoraphobia despite Plaintiff's report of having difficulties socializing. Tr. 37. The evidence did not reveal that Plaintiff had serious deficits in communication and behavior and, according to the treatment notes, paranoia or personal conflict was denied. Id. The ALJ also found that Plaintiff had mild limitations in concentrating, persisting, or maintaining pace because there was evidence of a very mild

cognitive impairment. Tr. 37. Plaintiff was also found to have linear and coherent thinking with fair judgment and insight. Id. As to Plaintiff's ability to adapt or manage herself, the ALJ concluded that the record did not contain evidence of decompensation or other substantial reaction to stressful circumstances. The ALJ noted that Plaintiff had never received inpatient psychiatric treatment and that her mental health treatment was limited to counseling and medication management. The ALJ also noted that Plaintiff participated in a wide range of activities of daily living and performed independent care activities. Tr. 37. At step two of the sequential analysis, the ALJ thus found that Plaintiff's mental impairments caused no more than mild limitations in the four functional areas (her ability to perform basic mental work activities) and was non-severe. Tr. 36. See 20 C.F.R. § 404.1520a(d)(1); Robles v. Comm'r of Soc. Sec., 2021 WL 3553788, at *3 (D.P.R. Aug. 11, 2021). At the conclusion of the step two analysis, the ALJ stated that the RFC analysis to follow at step three "reflect[ed] the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." Tr. 38.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P. App. 1 and proceeded to determine Plaintiff's RFC. Tr. 39-42. The ALJ stated that, in formulating the RFC, he had to consider all impairments, including those that were non-severe (Tr. 36), and that his findings at step two regarding Plaintiff's mental functioning were considered. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b) except that "she can never climb ropes, ladders, and scaffolds and cannot work with exposure to unprotected heights or hazardous machinery. She can occasionally climb stairs and ramps; never crawl; and occasionally kneel, stoop, and crouch. She can frequently balance. The claimant must be able to wear shaded or tinted lenses during work hours." Tr. 39. The ALJ deemed that Plaintiff was able to perform her past relevant work as a sewing machine operator, as defined in the Dictionary of Occupational Titles. Tr. 42. Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 43-44.

> A. **Plaintiff's Allegations of Error**

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the ALJ was not qualified to assess an RFC based on raw medical data, (2) the ALJ erred by not

including Plaintiff's mental limitations in his RFC finding, and (3) the ALJ failed to properly assess the medical opinion evidence. Docket No. 24. The Court finds no error.

### 1. Physical RFC Assessment

Plaintiff contends that the ALJ erred because he considered medical evidence from Riverside Medical Group (Tr. 1247-1422) on Plaintiff's spinal pain and surgery without obtaining an assessment of such evidence from medical experts.[3] Docket No. 24 at pp. 17-19. The Commissioner counters that the ALJ could interpret such evidence and formulate an RFC. Docket No. 29 at 8-10.

Generally, the ALJ is a lay person who is unqualified to interpret "raw technical medical data." Berrios v. Sec'y of Health & Hum. Servs., 796 F.2d 574, 576 (1st Cir. 1986). As such, the ALJ should not formulate an RFC based on a bare medical record. Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 329 (1st Cir. 1990). The ALJ must also avoid substituting uncontroverted medical opinion for his own impressions and needs a medical expert to "translate medical evidence into functional terms." Segundo-Méndez v. Comm'r of Soc. Sec., 2023 WL 6356644, at *10 (D.P.R. Sept. 29, 2023). But an ALJ may render a common-sense judgment regarding an individual's capacities, so long as he "does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils, 921 F.2d at 329. Such judgments are possible "where evidence shows a 'relatively mild physical impairment posing, to the layperson's eye, no significant restrictions." Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (quoting Roberts v. Barnhart, 67 Fed. Appx. 621, 622-23 (1st Cir. 2003)). The ALJ here did consider the DDS's limitations assessment and the evidence in the record, including the subsequently received medical evidence, and applied common sense to determine Plaintiff's physical RFC. Gordils, 921 F.2d at 329.

The ALJ began by acknowledging Plaintiff's testimony at the hearing. Tr. 40. Claimant testified as to the constant pain in her lower back which is aggravated by prolonged standing or walking. Id. She stated that she can stay in one position for ten minutes at a time and can walk just one block. Plaintiff testified that despite receiving injections and physical therapy to relieve her pain, her symptoms remained the same. Id. And that she uses a walker for assistance and had

---

[3] The Disability Determination Service ("DDS") issued an administrative finding regarding Plaintiff's physical functional limitations, which the ALJ discussed in his decision. But that analysis of the DDS was conducted without the benefit of the medical evidence of the Riverside Medical Group. Tr. 41, 427-438.

trouble performing daily activities, such as dressing and shopping. Id. The ALJ noted that, although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the intensity, persistence, and limiting effects of the symptoms were inconsistent with evidence in the record. Tr. 40.

The ALJ discussed examinations, procedures, and diagnoses from the alleged onset date through Plaintiff's last insured date. From February 2017 until 2018, Plaintiff visited Dr. Héctor Pérez-Feliciano, a general practitioner. Tr. 40, 839-908. Plaintiff complained of upper back spasms, back pain, joint pain, and headaches. Tr. 41, 879, 791-99, 863-64, 869-871, 881-83, 898. However, her physical examinations were normal with musculoskeletal findings limited to back spasms. Plaintiff was deemed to have normal gait, station, and extremity function. Tr. 878, 882. Plaintiff also described a wide range of activities of daily living. Tr. 865, 869-70, 880, 883, 889, 892. The ALJ additionally noted that Plaintiff had visited a pain management physician in mid-2018 who evaluated Plaintiff's pain and treated it with injections. Tr. 40, 830-38.

In his RFC explanation, the ALJ noted that Plaintiff had an examination with Dr. Betty Vekhnis, an SSA consultative examiner, on August 19, 2019. Tr. 41, 982-987. Plaintiff reported symptoms of back and neck pain, and poor sleep. Tr. 982. Her cervical spine showed no vertebral tenderness, no abnormal tilt, and her range was full. Tr. 983. Her lumbar spine showed no vertebral tenderness, no spams, and she could flex to 60 degrees. Id. Her gait was normal, and she did not use an assistive device for walking. Id. The ALJ noted that Dr. Vekhnis' findings supported an RFC for light work with moderate postural limitations to account for the reduced spinal mobility. Tr. 41. The ALJ further discussed medical evidence from late 2019 and 2020 that accounted for Plaintiff's back and neck pain. However, Plaintiff physical examinations showed intact strength, mobility, and non-focal neurological findings. Tr. 41, 1007-1011, 1037-38, 1040, 1043, 1055, 1086. The ALJ next discussed the DDS's physical functional limitation assessment. Although the DDS's findings indicated that Plaintiff could perform the full range of medium work, which was somewhat supported by the physical examination findings in the record, the ALJ noted that the DDS did not consider the subsequently received medical evidence of Plaintiff's treatment at Riverside Medical Group, which described spinal degeneration and surgery to ease the pain. Tr. 41, 422-424, 435-37,1247-1422. The ALJ thus deemed DDS's assessment unpersuasive.

Plaintiff started visiting Riverside Medical Group on June 4, 2019, with complaints of neck and back pain. Tr. 1255. Physical therapy was recommended. Plaintiff reported that, after several

7

weeks of physical therapy, she noticed no difference in her back and neck pain. Tr. 1263. Throughout 2019, Plaintiff reported constant back and neck pain. Tr. 1265-66, 1277, 1294-98. An MRI was performed on October 25, 2019, which showed that Plaintiff had significant degenerative disc disease at levels L3-L4 and L4-L5 with broad disc herniation. Tr. 1277. The ALJ noted that despite her impairments and symptoms, Plaintiff was able to make an extended trip to Puerto Rico in late 2019 after an epidural steroid injection, and that she reported relief despite some residual pain. Tr. 41, 1273-1277, 1294-1298. Plaintiff continued experimenting pain during 2020. Tr. 1312, 1316-22, 1335-38, 1341-46. On November 12, 2020, Plaintiff's doctor suggested surgery. Tr. 1378-83. In February 2021, Dr. Milad Alam performed a spinal fusion on Plaintiff to help with her pain. Tr. 1408-1420. Post-surgery notes describe significant improvement in lower extremity radicular symptoms. Tr. 1408, 1412-13, 1415. Plaintiff's gait was adequate, and she had full strength and sensation in her extremities. Tr. 1412, 1419. Progress notes show that "[p]atient is doing well overall and pain is overall well-controlled." Tr. 1408.

  The ALJ acknowledged Plaintiff's surgery and reviewed treatment notes from her recovery process, along with evidence dating back to her alleged onset date. The ALJ concluded that "[Plaintiff's] effective improvement of pain symptoms and her intact physical functioning support a conclusion that [Plaintiff] remains able to perform a reduced range of light work." Tr. 41. While the evidence prior to surgery and post-surgery was not considered by the DDS and no medical expert assessed a physical RFC accounting for the subsequently received medical evidence, the evidence in the record supports the ALJ's assessment of Plaintiff's RFC. Marino v. U.S. Soc. Sec. Admin., 2018 WL 4489291, at *6 (D.N.H. Sept. 19, 2018) ("The ALJ did not improperly rely on raw medical data in reaching his conclusion, but instead focused on treatment notes interpreting raw diagnostic results and symptom comparisons **across the record**.") (Emphasis added). See also Davis v. Colvin, 2015 WL 3937423, at *2, n.2 (D. Me. June 25, 2015) ("To the extent that the [claimant] means to contend that a formal physical RFC completed by a medical source must be in the record in order for an [ALJ] to assign a physical RFC to a claimant, [plaintiff] is incorrect.").

  Plaintiff suggests that the medical notes from Riverside Medical Group were too complex to be assessed by a non-medical expert. Docket No. 24 at p. 18. However, such notes mention terms that, as the Commissioner correctly points out, are within the understanding of a lay person's

8

competence.[4] See e.g., Rudd v. Comm'r of Soc. Sec., 531 F.App'x 719, 725-727 (6th Cir. 2013) (the ALJ did not improperly interpret raw data where x-ray images had been interpreted by a radiologist who used relatable terms such as "no significant deformity, "only discrete arthritic changes," and "good alignment"). The ALJ here did not overstep the bounds of a lay person's competence and applied his common sense to determine the RFC.[5]

### 2. Analysis of Mild Mental Functional Limitations in the RFC

Plaintiff next argues that the ALJ erred by failing to account for the impact of her mild mental limitations in the RFC analysis. Docket No. 24 at pp. 19-20. The Commissioner contends that, if an ALJ finds a limitation to be minimal, it is not erroneous to omit the limitation from the RFC assessment. Docket No. 29 at pp. 13-15. The ALJ was not obliged to include minimal mental deficiencies in the RFC determination.

"The RFC assessment comes into play at step four, where the ALJ determines whether, despite her limitations, the claimant retains capacity to perform his past relevant work." D.C. v. Comm'r of Soc. Sec., 2021 WL 1851830 (D. N.J., May 10, 2021); 20 C.F.R. § 404.1545(a)(5)(i). A claimant retains the capacity to perform her past relevant work when she can perform the functional demands and duties of the job as actually performed or as generally required by employers throughout the national economy. See SSR 82-61, 1982 WL 31387 at *2; Ramos-Rodríguez v. Comm'r of Soc. Sec., 2012 WL 2120027, at *5 (D.P.R.). In making this determination, the ALJ must consider all the evidence in the record, including claimant's symptoms, laboratory findings, daily activities, medical sources statements, and medical history. See 20 C.F.R. § 404.1545(a)(1); SSR 96-8P. The RFC determination is a "function-by-

---

[4] Medical notes from Riverside Medical Group refer to terms such as "review of systems: musculoskeletal: positive for back pain and neck pain" (Tr. 1257); "degenerative discs disease cervical and lumbar spine" (Tr. 1257); "limited range of motion in both the neck and lower back" (Tr. 1264); "Neurologic exam reveals no deficits in the arms or the legs. Strengthen sensation appear to be intact. Reflexes appear to be intact." (Tr. 1264); "Cervical spine range of motion: full" (Tr. 1276); "Lumbar spine range of motion: limited to secondary pain." (Tr. 1276); "5/5 strength" in upper and lower extremities (Tr. 1269-70, 1276-77, 1368); "Able to perform tandem walking" (Tr. 1368); "Rapid grip and release: within normal" (Tr. 1368); and "Patient is doing well overall and pain is overall well-controlled" and "The patient reports significant improvement in her bilateral lower extremity radicular symptoms since undergoing her [surgery]" (Tr. 1408).

[5] As an additional ground for a remand, Plaintiff has suggested— but failed to develop— an argument to the effect that the evidence from Riverside Medical Group (Tr. 1247-1422) was "not examined by any medical professional." However, such an argument is deemed waived. Citizens Awareness Network, Inc. v. U.S. Nuclear Regulations Comm'n, 59 F.3d 284, 293-94 (1st Cir. 1995) (issues averted in a perfunctorily manner are waived). In any event, as discussed supra, the ALJ could consider the evidence and make common-sense judgments.

function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment." See 20 C.F.R. § 404.1545(a).

The RFC determination primarily focuses on an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. See SSR 96-8P: "Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims" (S.S.A. July 2, 1996). Thus, it is essential for the ALJ to evaluate the effect that any mental impairment may have on work-related activities, such as understanding, carrying out and remembering instructions, using judgment in making work-related decisions, responding appropriately to supervision, co-workers, and work situations, and dealing with changes in a routine work setting. Id. However, the ALJ is only required to consider evidence that is credible. And if the ALJ "concludes that a claimant's deficiency is 'so minimal or negligible that ... it would not limit her ability' to perform required work tasks, the ALJ may exclude that deficiency or limitation from the RFC without error." See D.C. v. Comm'r of Soc. Sec., 2021 WL 1851830, at *5 (citing Ramírez v. Barnhart, 372 F.3d 546, 555 (3rd Cir. 2004)); Lee v. Commissioner, 248 Fed. Appx. 458, 462 (3rd Cir. 2007) ("there was no need to include a mental impairment in the hypothetical as the determination that her condition was not severe was supported by substantial evidence")).

The ALJ did consider Plaintiff's mental impairments when formulating his RFC. Tr. 37-38. At step two of the sequential analysis, the ALJ concluded that the Plaintiff's medically determinable impairments of depression and anxiety did not cause more that minimal limitations in her ability to perform basic mental work activities and were non-severe. Tr. 36. In reaching a determination that Plaintiff has mild mental limitations (paragraph B criteria), the ALJ considered the evidence in the record. Tr. 36. The ALJ explained that the RFC determination reflected the degree of limitation he found in the paragraph B mental function analysis. Tr. 37-38. "This discussion and incorporation by reference [of the paragraph B criteria] is sufficient to satisfy the requirement that the ALJ consider all of Plaintiff's impairments in formulating the RFC." D.C. v. Comm'r of Soc. Sec., 2021 WL 1851830, at *5. See also Muñoz v. Comm'r of Soc. Sec., 2024 WL 1172666, at *9 (D.P.R. Mar. 19, 2024); Robles v. Comm'r of Soc. Sec., 2021 WL 3553788, at *4; Makowski v. Comm'r of Soc. Sec., 2017 WL 3151243, at *7 (D.N.J. July 24, 2017). "This is especially true when […] the mental impairment found at step two was not severe but mild."

10

Robles, 2021 WL 3553788, at *4 (internal citations omitted). See also D.C. v. Comm'r of Soc. Sec., 2021 WL 1851830, at *6; Chandler v. Berryhill, 2018 WL 3575258, at *3, *6 (E.D. pa. July 24, 2018). This was the case here. The ALJ's evaluation of the paragraph B criteria (which resulted in a finding that the mental impairment was not severe) and his incorporation of that analysis to the formulation of the RFC was sufficient.

### 3. Medical Evidence Assessment

At the hearing, Plaintiff's representative informed the ALJ that she needed time to submit additional evidence. The ALJ informed Plaintiff's representative that the record would stay open for 30 days after the hearing. Tr. 60. The ALJ also informed Plaintiff's representative that there were some exhibits (2F, 5F, 11F, and 16F pages 27-30, 32-33) that were in Spanish and the ALJ inquired as to whether those would be translated. Tr. 60. Plaintiff's representative asked for time to consider the issue and the ALJ agreed, informing that she should inform whether translations would be submitted and whether the documents were essential to the case. Tr. 60. On April 16, 2021, Plaintiff's representative informed the ALJ that the not-for-profit agency which represented Plaintiff did not have funds for translations. But that only exhibits 2F and 5F were essential to Plaintiff's disability claim. Tr. 788-90. Both exhibits were translated and considered by the ALJ. Tr. 34. The exhibits were considered in the ALJ's assessment of the paragraph B criteria and the RFC determination. Tr. 37, 40.

Plaintiff argues that the ALJ failed by not requesting an official translation of the documents. Docket No. 24 at pp. 22-23. Plaintiff sustains that the translation of the exhibits should have been done consistent with the SSA Hearings, Appeals, and Litigation Manual ("HALLEX"), specifically HALLEX I-2-5-76, and the SSA Program Operations Manual System ("POMS"), DI 23045.001. Id. at pp. 21-22. Although the First Circuit has not addressed whether HALLEX has binding force over an ALJ, "[it] is an open question in this circuit whether an ALJ's failure to comply with HALLEX can ever constitute reversible error." Rosario-Torres v. Comm'r of Soc. Sec., 2022 WL 4091889, at *4 (D.P.R. Sept. 6, 2022) (citing Coppola v. Colvin, 2014 WL 677138, at *6 (D.N.H. Feb. 21, 2014)) (emphasis in original). See also Green v. Astrue, 2013 WL 636962, at *10, n.5 (D. Mass. Feb. 20, 2013) (HALLEX lacks the force of law and is not enforceable) (ref. Bordes v. Comm'r of Soc. Sec., 235 Fed. Appx. 853, 859 (3d Cir. 2007)); Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000) (neither HALLEX nor POMS impose judicially enforceable duties). Similarly, the First Circuit has questioned whether the POMS has a binding effect on the agency's

11

decision-making process. Rose v. Shalala, 34 F.3d 13, 17, n.2 (1st Cir. 1994); Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 861, 863 (1st Cir. 1986); Bitsacos v. Barnhart, 353 F.Supp.2d 161, 168-69 (D. Mass. Jan. 21, 2005).  And even courts that have found that failure to comply with HALLEX can constitute reversible error have required claimants to demonstrate prejudice. Rosario-Torres, 2022 WL 4091889, at *4. Plaintiff has not made such a showing. Neither has Plaintiff explained how a remand would lead to a different result or that the translations were somewhat faulty or incorrect. The ALJ's non-compliance with HALLEX or POMS does not warrant remand. Shinseki v. Sanders, 556 U.S. 396, 409-410 (2009) ("the burden of showing that an error is harmful falls upon the party attacking the agency's determination"); Gill v. Colvin, 2014 WL 12906901, at *4 (1st Cir. Apr. 9, 2014) (unpublished) (remand not necessary where it would not lead to different result); Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("While an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.").

## IV.  Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of March 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge